```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
UNITED STATES OF AMERICA,               :
                                        :
          -v-                           :    05 Cr. 922 (DLC)
                                        :
CYRIL SMITH,                            :       MEMORANDUM
  a/k/a "Nicholas Smith,"               :         OPINION
  a/k/a "Nicholas Wright,"              :
  a/k/a "Mark Nicholas Smith,"          :
  a/k/a "Zero,"                         :
                    Defendant.          :
                                        :
----------------------------------------X
```

DENISE COTE, District Judge:

The defendant Cyril Smith's trial began on May 14, 2007. On May 30, the jury returned a guilty verdict on eight counts out of nine. This Opinion addresses the issue of Smith's competency to stand trial.

Some brief background is in order. Beginning on February 14, 2007, Smith applied to proceed pro se and challenged the Court's jurisdiction over him. See United States v. Smith, 05 Cr. 922 (DLC), 2007 WL 1002139, at *1 (S.D.N.Y. Apr. 27, 2007). For reasons already described in a separate Opinion, which is incorporated by reference, his application and challenge were rejected. Id. at *1-2.

In late March, Smith stopped cooperating with his assigned counsel Bruce Maffeo ("Mr. Maffeo"). At the May 9 final pretrial conference, Mr. Maffeo requested a competency

examination of Smith.  This request appeared to be motivated by counsel's frustration at Smith's refusal to consult with him and assist in the preparation of his defense.  At previous conferences, both Mr. Maffeo and Sanford Talkin, another attorney appointed to consult with Smith, had repeatedly assured the Court that Smith was competent.  Id. at *2.  The Court was firmly of the view that Smith was competent, based on observations of Smith at multiple conferences and the contents of the letters Smith had sent to the Court.  Those letters were coherent and suggested no problems associated with mental competency.  Nonetheless, as a "precautionary measure," United States v. Nichols, 56 F.3d 403, 414 (2d Cir. 1995), a competency examination was ordered at the May 9 conference in response to his attorney's request.

A forensic psychologist was retained to conduct the examination, but Smith refused to meet with the psychologist on both May 11 and May 12.  This refusal was entirely consistent with Smith's posture in the litigation as of that time.  He was refusing to acknowledge the legitimacy of the prosecution and the authority of the Court.

Nothing that transpired at the May 10 conference or at the trial has altered the Court's view that Smith was and is competent.  Smith has always been attentive to all of the proceedings, exhibits a clear grasp of what is going on in

2

court, and responds to courtroom events in a way that demonstrates his understanding of the proceedings.  For example, at the May 10 conference, Mr. Maffeo also informed the Court that Smith, who is in custody, intended to forego wearing civilian clothing at the trial.  The Court explained to Smith his right to wear civilian clothing and the risks he ran by appearing at trial in prison garb.  On the morning of May 14, before voir dire began, the Court again explained to Smith that the right to wear civilian clothing was to prevent the jury from knowing that he was in custody.  When asked if he understood his right not to wear prison garb during the trial, Smith responded, "That's what you said."

    Even though Smith refused to cooperate with his attorney at the early stage of the trial, he cooperated fully with trial proceedings.  After the jury panel entered the courtroom on May 14, the Court introduced the case and the lawyers to the jury panel.  When Smith was introduced, the Court asked him if he would like to stand up and turn around so that the members of the jury panel could see him.  He responded to the Court's request and stood up and turned around so that the panel members sitting in the gallery could see him.  During the entire voir dire, Smith paid close attention.  At the end of the day, after the jury panel was dismissed for the day, the Court noted that Smith had been watching the selection process attentively,

carefully looking at the potential jurors.  The Court again urged Smtih to consult with Mr. Maffeo and talk to him about the jury selection process.  The following morning, a jury was selected and the trial proceeded to opening statements.  Smith continued to pay close attention, and especially watched Mr. Maffeo closely as his attorney gave a strong and skillful opening statement.

Smith gradually changed his mind about refusing to cooperate with his attorney.  As the Government's case unfolded, he was drawn into the proceedings.  On the third day of trial, the first of the cooperating witnesses took the stand.  That afternoon, the Court observed at least three brief conversations between Smith and Mr. Maffeo.  The following day, there were further conversations between Smith and Mr. Maffeo.  Furthermore, members of Smith's family had been attending the trial, sitting near the front of the gallery, and during recesses Smith would often talk to them from his seat.  On Wednesday evening, the family met with Smith during visiting hours as well.  Mr. Maffeo hoped that Smith's family would be able to convince Smith to cooperate fully with defense counsel.

Over the weekend, Mr. Maffeo was able to meet with Smith, and they continued to meet during the second week of trial.  During that week, Smith remained engaged and attentive, and he and Mr. Maffeo frequently conversed.  Most significantly, Smith

took the witness stand and testified on his behalf, even though Mr. Maffeo and apparently Smith's family had strongly advised him against testifying.  This testimony was irrefutable evidence of his competency to stand trial.  At no point did he exhibit any evidence of mental illness.  The tack he took was obstinately to deny all of the evidence amassed against him.  He denied any drug dealing, using a woman companion as a drug mule, being a close friend of the Government's chief witness against him, and ever knowing that his neighborhood in the Bronx was ringed with crack spots.

The decision to take the stand and to testify as he did underscore Smith's willfulness and obstinacy, but do not suggest that he suffered from any mental illness.  He clearly understood what was at stake in the proceedings, was entirely oriented to the events at trial, and demonstrated a high level of functioning in defending himself on the stand.  While the wisdom of Smith's choices is very much in doubt, his competency to make those choices is not.

Overall, during the length of the trial, Smith remained attentive and engaged.  He watched and listened to the testimony carefully, and by the second week, was also consulting with his attorney.  During the recesses he would turn around in his chair and talk to his family members.  He remained alert at all times and was clearly aware of his surroundings and the nature of the

proceedings against him. When he took the witness stand, he answered all questions in a clear and coherent way, and had no difficulty understanding the questions. At no point during the trial did Mr. Maffeo renew his request for a competency examination. The Court has no doubt that Smith was competent to stand trial.

SO ORDERED:

Dated:   New York, New York
         June 13, 2007

                                   _____
                                           DENISE COTE
                                   United States District Judge